## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**, | ) ) | |
| | ) | Civil Action File No.: |
| Plaintiff, | ) | |
| | ) | **5:23-cv-05149-TLB** |
| v. | ) | |
| | ) | |
| **WALMART, INC., WALMART STORES ARKANSAS, LLC**, | ) ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADA), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Glenda Scott, Jaclyn Walker, and a class of former employees who were adversely affected by such practices.

As alleged with greater particularity below, Walmart, Inc. and Walmart Stores Arkansas, LLC (Defendants or Walmart) subjected Glenda Scott, Jaclyn Walker, and a class of former employees to an unlawful qualifications standard, a Pathways Graduation Assessment (PGA), that screened out or tended to screen out a class of individuals with disabilities and subjected them to an adverse employment action, termination, after they failed the PGA. The Commission alleges the PGA was neither job-related nor consistent with business necessity. Walmart also failed to provide reasonable accommodation for the PGA.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Arkansas.

## PARTIES

3.      Plaintiff Equal Employment Opportunity Commission (Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of Titles I and V of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) and Section 707 of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and § 2000e-6.

4.      Defendant Walmart Inc. and Defendant Walmart Stores Arkansas LLC, (Walmart), are headquartered in Bentonville, Arkansas, and is the largest retailer in the world. Walmart operates stores in North Little Rock and Fayetteville, Arkansas. At these store locations, Walmart required the PGA that was neither job-related nor consistent with business necessity.

5.      At all relevant times, Walmart has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6.      At all relevant times, Walmart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

2

7.      At all relevant times, Walmart has continuously been doing business in the state of Arkansas and across the United States and has continuously had at least 15 employees.

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Glenda Scott (Scott) and Jaclyn Walker (Walker) filed charges with the Commission alleging violations of the ADA by Walmart.

9.      On July 8, 2022, the Commission issued to Walmart Letters of Determination finding reasonable cause to believe Walmart violated the ADA with respect to Scott, Walker, and a class of aggrieved individuals and invited Walmart to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.     The Commission engaged in communications with Walmart to provide Walmart the opportunity to remedy the discriminatory practices described in the Letters of Determination.

11.     The Commission was unable to secure from Walmart a conciliation agreement acceptable to the Commission.

12.     On August 12, 2022, the Commission issued to Walmart Notices of Failure of Conciliation advising Walmart that the Commission was unable to secure from Walmart a conciliation agreement acceptable to the Commission.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

14.      Walmart is the largest retailer in the world. Walmart employs over 1.5 million associates nationwide. Walmart has opened thousands of stores in the United States.

## GENERAL ALLEGATIONS

15.     On or about 2015, Walmart started requiring its hourly new hires to take the PGA, a qualification standard.

16.     The PGA, a qualification standard, allegedly assessed the employee's comprehension, retention, and understanding of the computer-based training (CBL) modules comprising the Pathways Training Program (PTP).

17.     The elements of the PGA allegedly measure the employees' knowledge on the covered topics of customer service, inventory essentials, retail fundamentals, and merchandising.

18.     Before May 1, 2018, Walmart employees had 180 days from date of hire to complete the PGA which included 40 questions. After May 1, 2018, Walmart employees had 90 days to complete the PGA which included 25 questions.

19.     Walmart gave employees three opportunities to pass the PGA.

20.     The PGA was a self-administered, computer-based knowledge assessment and was required for all entry-level store associates in 31 positions nation-wide.

21.     Walmart terminated employees who did not pass the PGA after three attempts.

22.     Walmart terminated employees who did not pass all portions of the PGA even if the employee could perform the essential functions of the job and who were performing the essential functions of the job before taking the PGA.

23.     The PTP required each new hire who failed the PGA after three unsuccessful attempts to be terminated within seven days of the last attempt. Termination was mandatory, even if the employee could perform the essential functions of the job and was performing the essential functions of the job before taking and failing the PGA three times.

24.     The PGA unlawfully screened out or tended to screen out an individual with a disability and/or a class of individuals with disabilities.

25.     Walmart unlawfully used the PGA as a qualification standard that screened out individuals with disabilities.

26.     The original PGA consisted of a bank of 50 questions.

27.     The 2018 edition of the PGA was a bank of 33 questions.

28.     The PGA was designed, developed, and validated to measure mastery of training knowledge of *all* entry level hourly store associates in 31 jobs.

29.     The same questions were used for *all* 31 job positions.

30.     Validation of the PGA was not limited to job-relatedness for the specific skills of the position the new hire worked.

31.     The PGA provided "defined steps to being successful in the associate's current role and what's needed to reach the next one."

32.     A person hired as a sales associate or stocker needed to pass CBL training specifically related to the role of cashier, maintenance, merchandising, customer service, and other positions.

33.     Walmart's PGA was   neither job-related nor consistent with a business necessity as required by the ADA.

34.     Like the training modules, the elements of the PGA allegedly measured the employees' knowledge on customer service, inventory essentials, retail fundamentals, and merchandising acquired and retained from the CBL.

35.     Walmart did not adjust the associate's performance results on the PGA to reflect the performance on the specific behaviors required for the job.

36.    The validation of the PGA was based on a question's relevance to the training content, not the associate's job.

37.    Walmart's Pathway Accommodation Policy provided: "If you observe an associate having difficulty completing Pathways, or if an associate indicated they need assistance due to a disability or medical disability or medical condition, refer to the Ask ADA page on the WIRE."

38.    Despite the directive, no one monitored or supervised the training and testing occurring in the training room.

39.    New associates, including those with disabilities, were alone in the room while testing.

40.    The PTP envisioned "Touch base conversation" between the Hourly Supervisors and new associates, Co-Managers and new associates, as well as the Manager and new associates regarding training, guidance, and Pathway successes.

41.    These conversations were also opportunities to address Pathway failures and the need for accommodations.

42.    These conversations did not occur.

43.    Closed captioning was not part of the training materials.

44.    Walmart's Accommodation in Employment - (Medical-Related) Policy (Accommodation Policy) includes in its list of reasonable accommodations providing readers and interpreters.

45.    Walmart unlawfully denied reasonable accommodations needed by individuals with disabilities to pass the PGA.

46.    Walmart unlawfully discharged individuals with disabilities who could not pass the PGA.

47.     Walmart discontinued the PGA in 2020.

## STATEMENT OF CLAIMS

48.     Since at least December 2015, Walmart engaged in unlawful employment practices at Walmart in North Little Rock, Arkansas, Walmart in Fayetteville, Arkansas and at other Walmart stores throughout the United States in violation of Title I of the ADA, 42 U.S.C. §§ 12112.

49.     The unlawful employment practices included using an unlawful testing/qualification standard, the PGA, that screened out or tended to screen out individuals with disabilities, who took it and who failed certain sections because of their disabilities. Walmart then terminated employees who failed the PGA. The unlawful employment practices also included failing to accommodate individuals with disabilities and failing to select and administer tests concerning employment in the most effective manner.

## <u>CHARGING PARTY GLENDA SCOTT</u>

50.     Scott began her employment with Walmart in 2016 after graduating from the Arkansas School for the Deaf in 2014 and completing one year with Arkansas Career Training from 2015 through 2016.

    a.     Scott was born Deaf and is non-verbal.

    b.     She attended public school through second grade.

    c.     Scott moved away from her family as a third grader to attend the Arkansas School for the Deaf until she graduated.

    d.     Scott communicates via American Sign Language (ASL).

    e.     ASL is her first and primary language.

    f.     English is her second language.

7

g.    Scott reads English, her second language, on a fourth grade reading level.

h.    Scott is substantially limited in the major life activity of hearing and speaking.

i.    Scott applied for work at Walmart and Assistant Manager Barnard LNU interviewed her; her mother assisted her during the interview.

j.    Barnard knew Scott was deaf and non-verbal. Scott started as a Sales Associate in Apparel. She flourished and Walmart benefited from her services. Scott and the management team communicated by writing notes or typing on her phone. Scott's mother visited the store weekly to ask about Scott's performance.

k.    The report was always positive, "She's doing a great job!"

l.    Scott commenced the CBL and was accommodated through the training.

m.    She wrote questions and exchanged notes with the person who helped her.

n.    Scott performed well on the CBL.

o.    While in the Apparel Department, Scott was recognized for her performance and had her picture taken with the "Happy to Help" smiley-face pillow.

p.    Walmart asked Scott to move to Cake Decorating and she received a salary increase.

q.    Scott enrolled in the University of Arkansas Pulaski Technical College (UA-PTC) Baking and Pastry Arts' associate degree program. There, she was provided with a note taker and an interpreter, and graduated in 2021. In

March 2018, while attending UA-PTC, Scott began working part time at Walmart in North Little Rock, Arkansas.

r.   Scott was employed as a Sales Associate in Apparel.

s.   Scott worked on Friday, Saturday, and Sunday evenings.

t.   David Lott was the Apparel Manager.

u.   Scott communicated with Lott by writing notes. Lott knew Scott was Deaf and non-verbal.

v.   Scott satisfactorily performed the essential functions of the apparel associate position.

w.   Walmart told Scott she needed to complete the PTP modules and the PGA to continue her employment.

x.   Scott is a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

y.   Scott told Lott that she needed an interpreter to assist with PTP, including the PGA.

z.   Lott told Scott to take notes.

aa.   The trainings were not closed captioned.

bb.   Scott sent text messaged the Store Manager Christian LNU, and told him that she needed an interpreter.

cc.   Christian told Scott, "We don't have an interpreter."

dd.   Walmart did not provide Scott with an interpreter for the PTP classes or the PGA.

ee.    Walmart failed to offer Scott a reasonable accommodation as provided in its Accommodation and Pathways Policy. Walmart's Accommodation in Employment - (Medical-Related) Policy includes providing interpreters in its list of reasonable accommodations.

ff.    The PGA was difficult for a Deaf person with no interpreter. The person on the screen was talking and the materials did not display closed captioning.

gg.    Scott was told to put on the headset.

hh.    Scott read the questions to determine the content of the training.

ii.    Scott did not understand the vocabulary in the training materials.

jj.    Scott made a list of the words so she could look them up later.

kk.    Without an ASL interpreter, Scott took the first PGA on May 5, 2018, and the second PGA on May 13, 2018.

ll.    Scott failed the PGA both times.

mm.    Retesting was available seven days after a failed attempt.

nn.    Walmart permitted Scott to retest on May 13, 2018, the same day she failed.

oo.    Despite failing the PGA, Scott continued working at Walmart until August 25, 2018, when Walmart terminated her employment.

pp.    During Scott's exit interview, Darrel Lord, Scott's supervisor, told Scott Walmart terminated her employment because she failed the PGA.

qq.    Lord said Scott was a good worker and he did not want to terminate her.

rr.    Lord said he had to terminate Scott because she failed the PGA three times.

ss.    Walmart did not discharge Scott because of any performance issues related to her work.

tt.    Walmart used unlawful testing, the PGA, to screen out Scott because of her disability and subjected her to an adverse employment action, termination.

uu.    Scott began looking for a job immediately after her termination.

vv.    Eighteen months later, Scott accepted a job with Ollie's and worked there until it closed during Covid.

## CHARGING PARTY JACLYN WALKER

51.    Walmart hired Walker as an overnight stocker at a Walmart grocery store in Fayetteville, Arkansas on November 15, 2017.

a.    As a child, Walker was diagnosed with intellectual disabilities and speech/language disabilities.

b.    Walker's disabilities substantially limit, at a minimum, brain function, and the major life activities of communicating, speaking, reading, learning, and thinking.

c.    Walker was enrolled in Special Education classes throughout her primary and secondary public-school education to address her special needs.

d.    Walker received both classroom and testing accommodations including, but not limited to, extended time to complete tests and assignments, small group testing, reduced multiple choice options, and vocabulary support upon request.

e.    In May 2017, Walker graduated with a diploma in special education requirements for a student under the Individuals with Disabilities Education Act with an Individualized Education Plan.

f.    Walker reads at a seventh-grade level.

11

g.    On Walker's second day of work, her father, Billy Walker – a Walmart employee – told Galen Wynn, the assistant manager, that Walker would need help with the PGA.

h.    One night, Walker's father was in the store where Walker worked and talked with Wynn. Wynn told Billy Walker, "Jaclyn is doing a good job for us."

i.    Walker satisfactorily performed the essential functions of her stocking job while employed by Walmart.

j.    Walker is a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

k.    Before June 24, 2018, Walker failed the PGA three times.

l.    Walker continued to work for Walmart until she was terminated on August 26, 2018, for failing the PGA.

m.    Walker failed the PGA due to her disabilities.

n.    Walmart discharged Walker due to her disabilities and her inability to pass the PGA.

o.    Walker was not terminated because of performance issues with the stocker position.

p.    Walker completed many CBL modules while working through the PTP.

q.    She requested help with the Pathways training and received help two times.

r.    Walker's Hourly Support Manager, Melissa Knobbe, sat with Walker during the stocker position portion of the PGA.

s.    Walker passed this portion of her training because Knobbe sat with her and because Walker knew how to do her job.

t.      Walker asked one of the support managers, Bethesda, for help on one module.

u.      When Walker proceeded with the PGA, she could not pass the cashier position portion.

v.      Walker believed she passed everything but the cashier training.

w.      Walker watched the videos but could not remember what she had just watched.

x.      Walker used the headphones.

y.       No closed captions existed in the materials. No one told Walker that she had to launch the closed captioning.

z.      There were no popups advising her on ways to seek help.

aa.     Walker found the PGA very difficult because it was a learning-based assessment.

bb.     Because of her intellectual disability, Walker could not count money.

cc.     Walmart's administration of the PGA without providing a reasonable accommodation was unlawful in that it screened out Walker because of her disabilities and subjected her to an adverse employment action, termination.

dd.     Walmart failed to follow its own Accommodation and Pathways policy which required it to offer Walker a reasonable accommodation. Walmart's Accommodation Policy includes providing readers in its list of reasonable accommodations.

## ADDITIONAL CLAIMANTS

52.    Walmart subjected a class of other unidentified individuals with disabilities, (claimants) to termination after they failed the PGA.

    a.    Walmart required that the claimants take the PGA.

    b.    The claimants were qualified individuals with a disability under 42 U.S.C. §§ 12102(2) and 42 U.S.C. § 12111(8).

    c.    Because of their disabilities, the claimants could not pass the PGA without reasonable accomodations.

    d.    Although the claimants performed the essential functions of their jobs, the claimants failed to pass certain sections of the PGA, and Walmart terminated their employment.

    e.    Walmart's administration of the PGA without providing a reasonable accommodation was unlawful in that it screened out the claimants because of their disabilities and subjected them to an adverse employment action, termination.

    f.    Walmart never offered an accommodation to the claimants as provided in its Accommodation and Pathways policy.

## FIRST CLAIM FOR RELIEF

### Using Discriminatory Unlawful Testing/ Qualification Standard

53.    From at least December 2015 through March 31, 2020, Walmart used an unlawful testing/qualification standard, the PGA, that screened out or tended to screen out individuals with disabilities.

54.     Walmart required all entry level hourly associates working nationwide, in 31 positions, to take the PGA.

55.     Walmart required all entry level store associates, including employees with disabilities, to pass the PGA with a minimum score of 70%.

56.     Walmart required all employees who were satisfactorily performing all the essential job functions of their positions to take and pass the PGA.

57.     Walmart applied and used the PGA as a qualification standard that screened out or tended to screen out individuals with disabilities. The PGA is neither job-related nor consistent with business necessity in violation of Section 102(a) and 102(b)(6) and 42 U.S.C. § 12112(a) and (b)(6).

58.     The policies and practices complained of in the preceding paragraphs deprived Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants of equal employment opportunities and otherwise adversely affected their status as employees because of their disabilities.

59.     The unlawful employment practices complained of in the paragraphs above were intentional.

60.     The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to the federally protected rights of Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants.

## SECOND CLAIM FOR RELIEF

### Failure to Provide Accommodation

61.     Scott is Deaf and non-verbal. Her disabilities are open and obvious.

62.     Scott is substantially limited in the major life activity of hearing and speaking.

15

63.     Walmart knew Scott was Deaf and non-verbal. Walmart provided Scott with a badge to wear that stated, "I am Deaf."

64.     Scott passed the CBL when she was accommodated at the Pine Bluff store.

65.     Scott passed her classes at UA-PTC when she was provided an interpreter.

66.     Scott requested an interpreter.

67.     Scott's ability to pass the PGA increased if Scott had been provided an interpreter.

68.     Providing an interpreter would have been reasonable.

69.     Walmart failed to provide Scott an interpreter for the training and the PGA.

70.     Walker was diagnosed with intellectual disabilities and speech/language disabilities. Walker's disabilities are open and obvious.

71.     Walker's disabilities substantially limit, at a minimum, brain function, and the major life activities of communicating, speaking, reading, learning, and thinking.

72.     Walmart knew from Walker's open and obvious demeanor and speech that she had intellectual disabilities and speech/language disabilities.

73.     Walker completed her high school education with accommodation.

74.     Walker passed the stocker CBL when she was accommodated.

75.     Walker's father requested an accommodation for the PGA.

76.     Walker requested help with the training and PGA.

77.      Walker's ability to pass the PGA increased if Walker had been provided someone who could read the materials to her.

78.     Providing a reader would have been reasonable.

79.     Walmart failed to provide Walker with someone to read and assist her with the training and the PGA.

80.     Walmart applied and used the PGA as a qualification standard that screened out or tended to screen out individuals with disabilities and failed to make reasonable accommodation in violation of Section 102(a) and 102(b)(6) and 42 U.S.C. § 12112(a) and (b)(3), (b)(5)(A), (b)(6), and (b)(7).

81.     The policies and practices complained of in the preceding paragraphs deprived Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants of equal employment opportunities and otherwise adversely affected their status as employees because of their disabilities.

82.     Walmart required passage of the PGA  before new associates could continue their employment.

83.     Walmart required Scott, Walker, and all similarly aggrieved individuals  to pass the PGA within 90-days of their employment.

84.     Scott, Walker, and all similarly aggrieved individuals were qualified individuals with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

85.     The ADA requires Walmart to provide a reasonable accommodation to all qualified employees who needed an accommodation for the PGA.

86.     The PTP instructed managers and supervisors on accommodating associates taking the training and the PGA if managerial staff observed an associate having difficulty completing Pathways. Walmart's policy required and provided for reasonable accommodations, including interpreters and readers, yet Walmart did not follow its policy.

87.     The PTP instructed managers and supervisors on accommodating associates taking the training and the PGA if an associate stated they needed assistance due to a disability or medical disability or medical condition.

88.     Scott, Walker, and all similarly aggrieved individuals requested assistance with the training and the PGA.

89.     David Lott and Christian LNU disregarded Scott's request for an interpreter.

90.     Walker's supervisors disregarded Walker's request for assistance.

91.     Walmart's response to Scott's request for an interpreter disregarded her right to an accommodation.

92.     Walmart's response to Walker's request for assistance disregarded her right to an accommodation.

93.     Scott, Walker, and other claimants lost their jobs, suffered embarrassment, and experienced humiliation because they were terminated for failing the PGA.

94.     Walmart terminated qualified individuals in Arkansas and in other states because they failed the PGA.

95.     The unlawful employment practices complained of in the  paragraphs above were intentional.

96.     The unlawful employment practices complained of in the above paragraphs were done with malice or with reckless indifference to the federally protected rights of Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants.


**THIRD CLAIM FOR RELIEF**

**Discharge**

97.     Since at least December 2015, Walmart has violated the ADA by terminating employees who failed to pass the PGA with a 70% or better pass rate because of their disabilities, 42 U.S.C. §§ 12112(a) and (b)(6).

98.     Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants are qualified individuals with disabilities.

99.     Walmart discharged Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants because their disabilities prevented them from passing the PGA.

100.     Walmart discharged Scott after she failed the PGA three times because of her disability, deafness, which impacted her ability to pass the PGA.

101.     Although Scott performed the essential functions of the apparel associate position, Walmart discharged Scott.

102.     Walmart discharged Walker after she failed to pass certain portions of the PGA because of her Intellectual Disability and Speech/Language Disability.

103.     Walmart discharged Walker even though she was performing the essential functions of her stocker position.

104.     Walmart discharged Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants who failed the PGA but successfully performed the essential functions of their positions.

105.     When Walmart discharged Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants, and other similarly situated aggrieved individuals, Walmart failed to conduct an individualized assessment to determine whether the individuals required an accommodation during the test-taking process.

106.     The unlawful employment practices complained of in the paragraphs above were intentional.

107.    The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to the federally protected rights of Charging Parties Glenda Scott, Jaclyn Walker, and unidentified claimants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Walmart, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates based on disability or the need for a reasonable accommodation.

B.    Order Walmart to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals with disabilities or who are regarded as having disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.    Grant a permanent injunction enjoining Walmart, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against individuals with disabilities.

D.    Grant a permanent injunction enjoining Walmart, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from interfering with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right protected by the ADA.

E.      Grant a judgment requiring Walmart to pay appropriate back wages in an amount to be determined at trial and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the acts complained of above.

F.      Order Walmart to make whole all individuals adversely affected by the unlawful practices described above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to, reinstatement, provide front pay in lieu of reinstatement, or otherwise make whole disabled individuals affected by Walmart's unlawful practices.

G.      Order Walmart to make whole Glenda Scott, Jaclyn Walker, and all similarly aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H.      Order Walmart to pay Glenda Scott, Jaclyn Walker, and all similarly aggrieved individuals punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial.

I.      Award the Commission its costs of this action.

J.      Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

**KARLA GILBRIDE**
General Counsel

**CHRISTOPHER LAGE**
Deputy General Counsel

*/s/Faye A. Williams*
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

*/s/ Markeisha K. Savage*
MARKEISHA K. SAVAGE
Trial Attorney
AR Bar No. 2011288
(901) 685-4593
markeisha.savage@eeoc.gov

/s/ Sarah Howard Jenkins
SARAH HOWARD JENKINS
Trial Attorney
AR Bar No. 97046
Telephone: (901) 685-4631
sarah.jenkins@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
200 Jefferson Ave., Suite 1400
Memphis, TN 38103
Telephone (901) 685-4609

*/s/ Gary Sullivan*
GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051

*/s/ Pamela B. Dixon*
PAMELA DIXON
Trial Attorney
AR Bar No. 95085

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR 72201
Telephone (501) 900-6145
pamela.dixon@eeoc.gov