IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                    PLAINTIFF

v.                      CIVIL NO. 5:23-05149-TLB

WALMART, INC., WALMART
STORES ARKANSAS LLC                                                   DEFENDANTS


**DISCOVERY ORDER**

The Equal Employment Opportunity Commission (EEOC) has sued Walmart, Inc. and Walmart Stores Arkansas, LLC (Walmart), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101, *et seq.,* as amended by the Americans with Disabilities Act Amendments of 2008 (ADA) and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  The EEOC seeks correction of Walmart's alleged unlawful employment practices – administration of an unlawful qualifications' standard, a Pathways Graduation Assessment – provision of appropriate relief to charging parties Glenda Scott and Jaclyn Walker[1], and a class of former employees adversely affected by Walmart's practice of using the test to screen out, terminate and/or fail to accommodate a class of individuals with disabilities.  (ECF No. 41, Second Amended Complaint).  Walmart has answered and the case has been set for a jury trial during Judge Brooks' July 21, 2025, trial term, with a discovery deadline of January 31, 2025.

---

[1] Glenda Scott and Jaclyn Walker filed charges with the Commission, alleging Walmart's violation of the ADA.  (ECF No. 41, ¶ 8).  The Commission notified Walmart on July 8, 2022, via Letters of Determination, that the EEOC found it reasonable to believe that Walmart had violated the ADA with respect to Scott and Walker as well as a "class of aggrieved individuals," inviting conciliation which was conducted but was unsuccessful as of August 12, 2022.   Mr. Gray is a known claimant of the class who may piggyback onto the ADA litigation.  *Kloos v. Carter-Day Co.,* 799 F.2d 397, 400 (8th Cir. 1986).

1

The case is before the undersigned to resolve discovery disputes raised in accordance with Judge Brooks' Case Management Order. (ECF No. 35). The undersigned conducted a telephone call with counsel on May 7, 2024; received and reviewed the parties' letter briefing on pending issues (ECF Nos. 55, 56); and conducted a hearing on May 14, 2024, where all parties appeared by and through counsel and made arguments. (ECF No. 57).

## Attorney-Client Privilege

Discovery in federal court is governed by the Federal Rules of Civil Procedure, and Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Rule 501 of the Federal Rules of Evidence supplies the process by which federal courts are to determine privilege:

> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. The Federal Rules of Evidence provide that evidentiary privileges are "governed by the principles of the common law ... in the light of reason and experience." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (cleaned up). Pursuant to Fed. R. Evid. 501, where state law supplies the rule of decision, state privilege law applies; otherwise, federal law governs the privilege analysis. *See Von Bulow by Auersperg v. Von Burlow*, 811 F.2d 136, 141

(2nd Cir. 1987); *see also Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3rd Cir. 1982). Here, the Court looks to federal law for guidance. *See Von Burlow*, 811 F.2d at 141.

Of the various recognized privileges, the attorney-client privilege – appearing as early as the sixteenth century[2] – is widely considered to be the oldest and most respected of them. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."); s*ee also United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges…."). "Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client." *United States v. Horvath,* 731 F.2d 557, 562 (8th Cir. 1984). The privilege's purpose is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. at 389. Preservation of the attorney-client privilege is "essential to the just and orderly operation of our legal system." *United States v. Ivers,* 967 F.3d 709, 715-716 (8th Cir. 2020).

Despite the importance of the attorney-client privilege, it must be narrowly construed, protecting only disclosures necessary to obtain informed legal advice which may not have been made absent the privilege. *See Fisher v. United States*, 425 U.S. 391, 403 (1976). A party asserting the privilege must "show that the statements at issue were 'made for the purpose of facilitating the rendering of legal services to the client.'" *See* Fed. R. Civ. P. 26(b)(5); *see also United States v. Ivers, supra; Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002).

---

[2] P.R. Rice, *Attorney–Client Privilege in the United States* § 1:1, at 6 (2d ed.1999).

Communications which fall outside the scope of the attorney-client privilege may nonetheless be protected by the work-product doctrine. *Hickman v. Taylor,* 329 U.S. 495 (1947). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," *In re Murphy,* 560 F.2d 326, 337 (8th Cir. 1977), the work-product doctrine "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Lamar Advertising of S.D., Inc. v. Kay*, 267 F.R.D. 568, 575 (D. South Dakota, April 12, 2010) (citations omitted). The work-product doctrine prevents "unwarranted inquiries into the files and mental impressions of an attorney" and "recognizes that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusions by opposing parties and their counsel." *Simon v. G.D. Searle & Co*., 816 F.2d 397, 402 (8th Cir. 1987). "The scope of work product protection is broader than the protection the attorney-client privilege provides because the work product doctrine is not confined to confidential communications between an attorney and a client, but rather extends to protect all 'documents and things' prepared in 'anticipation of litigation or for trial.'" *Columbia Ins. Co. v. Tibbott*, No. 11-cv-1040 (PAM/SER), 2012 WL 13027067, at *5 (D. Minn. June 21, 2012) (quoting *Onwuka v. Fed. Ex. Corp.,* 178 F.R.D. 508, 512 (D. Minn. 1997)). Work product may consist of "raw factual information," or it may include the attorney's "mental impressions, conclusions, opinions, or legal theories." *Baker v. General Motors Corp*., 209 F.3d 1051, 1054 (8th Cir. 2000).

The EEOC (who does not suggest it has an attorney-client relationship with every charging party and claimant) contends that an aggrieved party (i.e., charging party or claimant) who manifests assent to representation is entitled to the protections of the attorney-client privilege.

Arguing context is important, the EEOC points outs that manifestation of assent to representation by the EEOC may be verbal, written or supported by conduct such as providing the EEOC with documentation. Walmart – who does not seriously challenge that aggrieved parties may be entitled to assert the attorney-client privilege as to certain EEOC communications – argues that obtaining individuals' written assent to EEOC representation is a modest burden and would clarify the status between the EEOC and aggrieved parties, establishing when the relationship commenced and illuminating permissible inquiries by Walmart during the discovery phase.  Prior to the Court's discovery hearing, the EEOC provided three (3) declarations to Walmart from the two charging parties and claimant, attesting to their assent to be represented by the EEOC in this action. Walmart says written assent by aggrieved parties is the preferrable method of documenting this relationship, complaining only that the dates of assent were missing in the declarations.   In response, the EEOC committed to supplying the missing dates – on which the EEOC viewed assent to representation had occurred – prior to the depositions currently scheduled to commence on May 22, 2024.  If the EEOC has not yet provided the missing dates, disclosure should occur prior to commencement of the depositions of the charging parties and claimant.

Cases addressing application of the attorney-client privilege to the EEOC's communications with aggrieved individuals often recognize a de facto attorney relationship between the EEOC and these individuals; others discuss a joint or common interest which offers protection through the attorney-client privilege.   The EEOC urges the Court to apply the common interest doctrine, arguing that the Commission, charging parties and claimants are aligned in a common cause to redress Walmart's alleged violation of the ADA.  Walmart argues that the law does not support EEOC's broad interpretation and proposed application of the attorney-client privilege.

Courts within the Eighth Circuit have described the common interest doctrine as an exception to waiver of the attorney-client privilege in a situation where a party discloses otherwise privileged information to a third-party with whom it shares a common interest. *Ploen v. AIG Specialty Ins. Co.,* 2022 WL 2208328, at *6 (D. Minn. June 21, 2022), *aff'd,* 2022 WL 4533800 (D. Minn. Sept. 28, 2022).  Following *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 922 (8th Cir. 1997), where the Eighth Circuit examined whether a common interest existed between the White House and Hilary Clinton, courts in this Circuit have varied in application of the doctrine. *See Williams v. BHI Energy I Power Services, LLC,* 2022 WL 17485550 (D. Minn. Dec. 7, 2022) (discussing cases).

The undersigned is persuaded by an unpublished decision of U.S. District Court Judge James M. Moody protecting communications between the United States and Mr. and Mrs. Black in a case where the Government was enforcing the rights of the couple under the Fair Housing Act. Judge Moody opined that although there was no technical attorney-client relationship between the United States and the Blacks, the Government was pursuing the case to enforce their rights under federal law, and it should "not follow that persons who choose to utilize this [Fair Housing] Act give up their right to confidential communications with the attorney representing their interests." Judge Moody concluded that "[t]he substance and content of these communications between the Government's counsel and the Blacks is protected by the common interest in litigation privilege." *United States v. Webb,* No. 4:00-CV-698, 2-3 (E.D. Ark. Aug. 1, 2000).

The circumstances here differ slightly from *Webb* as the EEOC is pursuing the rights of three individuals with that number expected to increase as the EEOC contacts the more than 3,000 individuals identified by Walmart who may be aggrieved parties.  The EEOC pursues its interest in protecting communications with each of these aggrieved parties, arguing existence of a de facto

attorney-client relationship between these aggrieved parties and the EEOC.  Walmart does not contest that there may be communications to which a privilege attaches but seeks a workable solution whereby the narrow privilege may be observed without hampering Walmart in its investigation and defense of this litigation.

Whether an attorney-client relationship has been formed is not defined by a bright-line rule; the circumstances alleged to have created the relationship must be evaluated with the general requirement that both the attorney and client have consented, expressly or implicitly, to formation of the relationship. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (applying a case-by-case analysis to determine existence of an attorney-client privilege).   In *Diversified*, the Court of Appeals for the Eighth Circuit held that for the attorney-client privilege to apply,

> the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. A communication is not privileged simply because it is made by or to a party who happens to be a lawyer.

*See Diversified,* 572 F.2d at 601; *see also Pohle v. Union Pac. R.R. Co.,* 2022 WL 20689765, at *2 (S.D. Iowa Apr. 11, 2022) (applying *Diversified* to support existence of an attorney-client relationship "given the almost immediate retention of counsel by both parties, their involvement in the case was for legal purposes and to prepare for future litigation."); *but see Sanimax USA, LLC v. City of S. St. Paul*, 2021 WL 4846364, at *10 (D. Minn. Oct. 18, 2021) (applying *Diversified* to find no attorney-client relationship where individual was not seeking legal advice but merely emailing an attorney). Notably, existence of an attorney-client relationship does not hinge on execution of formalities but is instead dependent "upon the client's belief that he is consulting a lawyer in that capacity and has manifested intention to seek professional legal advice."

*See Bible Faith Lutheran Church of India, Inc. v. Ass'n of Free Lutheran Congregations Mission Corp.*, 1991 WL 1301309, at *1 (D. Minn. 1991) (quoting *Westinghouse Electric Corp., v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978), *cert. denied*, 439 U.S. 955 (1978)).

Without identifying every instance exemplifying formation of an attorney-client relationship, the undersigned finds the attorney-client privilege applies where an aggrieved party either asks the EEOC for advice or expressly assents to representation in a manner that is demonstrable and consistent with the establishment of an attorney-client relationship. Once this important hurdle has been cleared, communications between the aggrieved party and the EEOC and its agents are protected from disclosure by the attorney-client privilege. In so ruling, the undersigned is persuaded by the reasoning of *Bauman v Jacobs Suchard,* 136 F.R.D. 460, 461 (N.D. Ill. 1990) (de facto counsel in ADEA) and *EEOC v. International Profit Associates, Inc.,* 206 F.R.D. 215, 219 (N.D. Ill. March 27, 2002) (attorney client relationship formed by affirmative action) as well as Judge Moody's decision in *Webb, supra.*

The Court is additionally persuaded by Walmart's contention that facilitating robust discovery while skirting protected communications between the EEOC and aggrieved parties requires clear identification of where and when a de facto attorney-client relationship is formed. *See EEOC v. Republic Services, Inc.*, 2007 WL 465446 (D. Nev. February 8, 2007) (some affirmative step to enter a relationship with the EEOC must be taken). During the Court's hearing, the parties generally compromised on the following notice procedure: The EEOC will be directed to notify Walmart, not less than every fourteen (14) days, and on a continuing basis, (1) of the name and contact information of any individual who has manifested assent to be represented in this matter by the EEOC, and (2) the date on which assent to representation was demonstrable by

the aggrieved party. This rolling notification by the EEOC need only include information for individuals who have assented since the EEOC's most recent prior notification to Walmart.

While there is no standard metric for demonstrating assent to representation by the EEOC, the Court finds that, in most instances, documentation of the de facto relationship should take the form of a declaration (or affidavit) signed by the aggrieved party, or a letter, email or other written communication from the aggrieved party to the EEOC. The undersigned recognizes there may be circumstances requiring exceptions. Furthermore, should an aggrieved party manifest assent to be represented but later revoke or withdraw assent, EEOC should notify Walmart of this occurrence within fourteen (14) days of receiving notice of the withdrawal.

Walmart is correct (and the EEOC does not really challenge) that Walmart generally may discover communications between aggrieved parties and the EEOC prior to attachment of the attorney-client privilege as these prior communications are not privileged, even if an attorney-client relationship is later established unless the aggrieved party viewed the EEOC as his attorney at the time the communication was made. *See EEOC v. Johnson & Higgins, Inc.,* 1998 WL 778369, at *1 (S.D.N.Y. Nov. 6, 1998) (ADEA). The undersigned agrees, noting this contour is likely easier to articulate in an order than to parse during discovery.

Walmart may also conduct ex parte communications with its current and former employees who have been identified (or who may be identified in the future) as potentially aggrieved parties under the circumstances of this litigation if they have not been identified as having formed an attorney-client relationship with the EEOC. Arkansas' Rules of Professional Conduct – as well as substantially similar ethical rules in every jurisdiction – provide guidance on how to conduct ex parte communications with unrepresented individuals. Ar. R. Prof. Conduct 4.3. While the EEOC's fear concerning these contacts may be understandable when considering other litigation

experiences with Walmart and/or the economic reality of discussing a lawsuit against one's employer, the Court finds the EEOC has not made a showing of a heightened need for additional constraints on Walmart's contact with unrepresented and aggrieved parties, even where the aggrieved party is currently a Walmart employee. *See EEOC v. SVT, LLC.,* 297 F.R.D. 336, 343-344 (N.D. Indiana Jan. 8, 2014); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). Without any evidence of Walmart's misconduct in this regard, preemptively employing safeguards would improperly impair Walmart's ability to investigate the EEOC's claims.

Nevertheless, Walmart is reminded that rules governing professional conduct in every jurisdiction also include supervisory obligations; thus, it is incumbent to ensure that communications with unrepresented parties conform to the applicable ethical obligations, and consideration should be given to whether delegation of communication tasks to individuals unbound by the ethical standards will invite future court intervention. See for example, Ar. R. Prof. Conduct 5.3.

The undersigned offers related observations based on discussions during the recent hearing. Because merely reaching out (i.e., writing, calling, emailing) to aggrieved parties does not establish an attorney-client relationship, representations in such communications (by any party) are generally not protected by the attorney-client privilege although they may, in certain instances, rise to the level of ordinary work product. *EEOC v. CRST Van Expedited, Inc.,* 2009 WL 136025, *4 (N.D. Iowa January 20, 2009). However, questionnaires "returned to the EEOC by prospective claimants" are likely protected by the attorney-client privilege and/or work-product doctrine. *Bauman v. Jacobs Suchard,* 136 F.R.D. 460, 462 (N.D. Ill. 1990). While facts are not protected from disclosure, *see e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981), "[f]actual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the

attorney-client privilege," *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) (emphasis in the original), which could lend protection to EEOC investigations occurring near the date an aggrieved party seeks legal advice or manifests assent to representation, on a case by case determination. *See Thomas v. Marshall Public Schools,* 2023 WL 5743611, *9 (D. Minn. September 6, 2023).  And generally, Walmart will not be entitled to discover statements and notes of interviews of aggrieved parties conducted by the EEOC regardless of whether these parties ultimately manifest assent to representation as these materials have been identified in other cases as the EEOC's work product.  *EECO v. CRST Van Expedited*, 2009 WL 136025 (N.D. Iowa, Jan. 20, 2009).

### Third Parties Facilitating Communications

Recognizing that the attorney-client privilege may shield communications between the EEOC and aggrieved parties who have assented to representation, the EEOC then argues this privilege should extend to communications between the EEOC and third-party representatives of the aggrieved parties.  The EEOC describes that aggrieved parties often struggle with disabilities necessitating assistance of people they know and trust – such as parents, siblings, or companions – to effectuate the communications surrounding legal advice.  Walmart generally objects to any robust extension of the privilege, noting that where applicable, assertion of the privilege would require (1) an underlying consent by the aggrieved party to EEOC representation and (2) a showing that the family member's participation in a communication was reasonably necessary to facilitate legal advice to the aggrieved party.

The presence of a third party during a privileged communication generally acts to waive any privilege shared between attorney and client. *See United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003).  At least two exceptions, however, have been recognized.  First, the attorney-client

privilege is not automatically waived by the presence of a third party if the party invoking the privilege can demonstrate that the party possesses a common legal interest with the third party. *See U.S. v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997); s*ee also People ex rel. Madigan v. Illinois High School Ass'n*, 2014 WL 517969, at *2 (N.D. Ill. 2014).   Here, the Court does not find – on the record before it – that third parties (family members and/or friends of an aggrieved party) share any common legal interest in the EEOC's litigation against Walmart, and thus consideration of this exception is unnecessary.

Second, attorney-client privilege is not waived where the third party's presence is reasonably necessary to facilitate communication between the attorney and their client. *See also Cavallaro v. U.S.*, 284 F.3d 236, 246 (5th Cir. 2002); *Thompson v. Buhrs Americas, Inc.,* 2009 WL 10711525 (D. Minn. June 23, 2009), citing 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.15[3] (Joseph M. McLaughlin ed., 2d ed. 2009) (third party presence generally waives the privilege where the third person is unnecessary for communication between lawyer and client).  With respect to this exception, the third party who is present is not being represented, and they are not communicating information for their own endeavors; rather, the third party is aiding the facilitation of communication between an attorney and the client. *See* 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 183 at 312 (2d ed.1994). Courts have recognized limited situations when a third party's presence does not waive privilege because the third party is needed to enable the client to obtain informed legal advice. For some examples, see *Cavallaro v. U.S.*, 284 F.3d 236, 247 (5th Cir. 2002) (expert accountant assisting lawyer in rendering advice to client); *McCaugherty v. Siffermann* 132 F.R.D. 234 (N. D. Cal. 1990) (independent consultants hired by the client); *Thompson v. Buhrs Americas, Inc.*, 2009 WL 10711525, at *3 (D. Minn. 2009) ("Secretaries, clerks, and interpreters clearly fall within this

category."); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1977) (discussing cases regarding who is a representative of a corporation in need of legal advice).  Piecing cases together from multiple jurisdictions, it appears the privilege is generally not waived where a confidential communication is revealed to a third party who is assisting either the attorney or the client or both in informing, rendering, conveying, or acting on legal advice[3]. "[T]he underlying concern is functional: that the lawyer be able to consult with others needed in the representation and that the client be allowed to bring closely related persons who are appropriate, even if not vital, to a consultation." *United States v. Massachusetts Inst. of Technology,* 129 F.3d 681, 684 (1st Cir. 1997).

The EEOC cites a recent decision of U.S. District Judge P.K. Holmes in *Jason M. Hatfield, P.A. v. Ornelas*, 2023 WL 3391461, *1 (W.D. Ark. May 11, 2023) for the proposition that Proposed Rule of Evidence Rule 503(a) – approved by the U.S. Supreme Court in 1973 but never implemented by Congress and commonly known as Supreme Court Standard 503 – reflects the common law of attorney-client privilege, and provides that communications are privileged when made "between [a client] **or his representative** and his lawyer or lawyer's representative."  *See* Sup. Ct. Standard 503(a)(1) (emphasis added).  In a lengthy opinion covering multiple discovery disputes, Judge Holmes applied Standard 503(a)(1) in the context of American lawyers and their representatives assisting a licensed Mexican lawyer when speaking with their clients for the

---

[3] The undersigned is mindful that the Rules of Professional Conduct also contemplate a similar circumstance. Careful not to conflate or confuse disability with diminished capacity, Rule 1.14 of the Arkansas Rules of Professional Conduct provides useful guidance. Rule 1.14 contemplates situations where a client may have diminished capacity because of "minority, mental disability **or for some other reason**" and the notes suggest that in these instances, a client may wish to have family members or other persons participate in the discussions with the lawyer without risking the attorney client privilege.  Obtaining client consent as required in Rule 1.6, the lawyer can discuss legal advice with both the client and these representative individuals.  Ark. R. Prof. Conduct Rules 1.6 and 1.14.

"purpose of facilitating the rendition of professional legal services to the client," later noting, however, that the "attorney-client privilege does not extend to the communications between Defendants and lawyers for whom they were not acting as representatives" unless the Defendant was himself seeking legal advice. *Id*. at pp. 10, 19, 24. *Ornelas* does not specifically address application of Supreme Court Standard 503(a)(1) in the context of representatives of a client communicating with that client's lawyer, and Standard 503(a)(1) left the term "representative of the client" undefined.  Precedent of the Eighth Circuit suggests that representatives of the client should be viewed through the lens of agency law. *See In re Bieter Co.,* 16 F.3d 929, 940 (8th Cir. 1994) (analyzing the role of an individual/contractor/employee who attended meetings with and received letters from the attorney) (cited in *Ornelas* for a different proposition).

 The EEOC credibly describes that both charging parties – Walker and Scott – reasonably required, primarily due to disability, a third party to facilitate communications between them and the EEOC.  It is argued and reasonably anticipated that third parties may be required to facilitate future communications between the EEOC and aggrieved parties with disabilities.   Walmart does not challenge that this may be the case but contends that family members of these charging parties (and perhaps others "representing" them) are critical witnesses and their statements regarding relevant facts and circumstances should be shielded narrowly, if shielded at all.

 With respect to Walker and Scott – who have assented to representation by the EEOC – the attorney-client privilege extends to shield communications regarding facilitation or provision of legal advice to Walker and Scott's representatives during meetings with the EEOC; the privilege may attach even if the charging or aggrieved parties were not present for the communications. The extended privilege, however, cannot offer these representatives any greater protection than it offers the charging parties or claimants – i.e., the privilege protects only disclosure of communications;

it does not protect disclosure of underlying facts by those who communicated with the attorney. *In re Bieter,* 16 F.3d at 940-41. "[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing…a [client] may not refuse to disclose any relevant fact within this knowledge merely because he incorporated such statement of fact into his communication with his attorney." *Id.* These bedrock principles apply to Walmart's discovery directed to aggrieved party representatives.

With respect to future aggrieved parties, any such individual must manifest assent to representation by the EEOC and reasonably require representative assistance for facilitation of legal advice before the attorney-client privilege will shield the aggrieved party's communications with the EEOC. The EEOC should resist expansion of representatives beyond what is essentially required – preferably, impartial interpreters or translators or a single person familiar with the client's disability – as the practice of including third parties such as family and friends inevitably invite claims of waiver and risk introduction of bias and/or the representatives' interest in the outcome of the litigation.

### Asserting Attorney-Client Privilege

Advised that the attorney-client privilege has already been asserted in written discovery, the undersigned reasonably anticipates future assertion of the attorney-client privilege and/or work-product doctrine. Federal Rule of Civil Procedure 26(b)(5)(ii) requires parties withholding documents for privilege to "describe the nature of the documents, communications or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The party asserting the privilege bears the burden of its applicability. *United States v. Ivers,* 967 F.3d 709, 715 (8th Cir.

2020). A privilege log is the most conventional way to provide privilege descriptions. *Ornelas, supra; see also PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988 (8th Cir. 1999). Parties are reminded that privilege logs should be sufficiently detailed to enable other parties to assess the applicability of the privilege asserted. *Triple Five Minn., Inc. v. Simon,* 221 F.R.D. 523, 527-28 (D. Minn. 2002); *see also Taber v. Ford Motor Co.,* 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017) (observing "courts have generally held that the privilege log should set forth specific facts which if taken as true establish the elements of the privilege for each document for which the privilege is claimed"). Privilege logs may, but do not always, require an affidavit of counsel. *See Isham v. Booneville Community Hospital,* 2015 WL 11117159 (W.D. Ark., April 23, 2015). A delay or outright failure to provide a privilege log can waive the privilege, but waiver is not automatic. *Isham,* at 3. It is recommended that privilege logs be prepared close in time to the actual assertion of the privilege; while there is no current need for the undersigned to impose a deadline, neither party should wait until the completion of discovery to prepare privilege logs.

IT IS SO ORDERED this 21st day of May 2024.

*Christy Comstock*
CHRISTY COMSTOCK
U.S. MAGISTRATE JUDGE