IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WALMART, INC., WALMART STORES ARKANSAS, LLC,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　　No. 5:23-CV-05149-TLB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL**

The Court should compel the Commission to produce documents responsive to Walmart's Requests for Production Nos. 50-52 and Interrogatories Nos. 7-8 (the "Requests"). The RFPs at issue seek communications between the Commission and unrepresented third parties—specifically, individuals who were terminated after failing the Pathways Graduation Assessment (the "PGA") but are not participating in this case ("Potential Claimants"), Claimants (who have joined the case) prior to their assent to representation by the Commission, and other third-party witnesses. And the Interrogatories seek factual information about the identities of potential witnesses and their statements to the Commission. The Commission's blanket refusal to produce these documents and information on the grounds of privilege and work product is contrary to law and violates not one, but two of Judge Comstock's orders regarding this very topic. *See* ECF 58 "May 21, 2024 Order" at 8 (holding the attorney client privilege applies only after a claimant "expressly assents to representation"); ECF 71 "October 10, 2024 Order" at 10 (declining to extend attorney client privilege to communications with third parties and ordering production of communications that are not "clearly counsel's opinion work product.").

The withheld materials are vital to Walmart's defense of the case. They include not just potentially inconsistent and exculpatory witness statements, but a questionnaire and related responses that the Commission broadly distributed in its largely fruitless search for individuals who claimed that they failed the PGA due to a disability. Even though the Commission distributed the survey nationwide to *thousands* of current and former employees who were terminated after failing the PGA, it has only come up with *thirteen* to proceed as class members in this case. Those facts are powerful evidence that the *vast* majority of individuals who were terminated after failing the PGA failed for reasons wholly unrelated to any disability or alleged failure to accommodate, completely gutting the theory underlying the Commission's claims. And the most important

1

evidence of those exculpatory and potentially dispositive facts are the questionnaires and responses that the Commission now seeks to withhold based on meritless privilege and work product objections. The Court should compel the Commission to produce the requested information.

## I.  BACKGROUND

The Commission brought this case as a nationwide class action, claiming that the PGA was an unlawful qualification standard that tended to exclude individuals with disabilities and that Walmart failed to reasonably accommodate individuals with disabilities in connection with the PGA. In discovery, the Commission focused on seeking to identify "Claimants" to add to the case—i.e., those that the Commission claimed were terminated because they failed the PGA due to a disability or the alleged failure to accommodate a disability. In April and June of 2024, Walmart identified to the Commission all associates nationwide who were terminated after failing the PGA between February 2015 and March 2020, including their last known contact information (if any)—a total of 5,391 names. During the period from June 2024 to November 22, 2024 the Commission provided the names of over 220 Potential Claimants, individuals whom the Commission identified to potentially add as actual Claimants in the lawsuit, indicating that the Commission had engaged in extensive outreach to try and identify Claimants to add to the case. The Commission confirmed the use of a survey in its description of the dispute submitted to the Court on May 1, 2025.

The Commission's efforts were largely in vain. On November 22, 2024, the Commission provided amended initial disclosures identifying a total of only *thirteen* additional Claimants beyond the two individuals identified in the Commission's Second Amended Complaint and the first identified additional claimant, bringing the total number of individuals in the alleged nationwide "class" to sixteen. And on April 28, 2025, the Commission again amended its initial

2

disclosures to *withdraw* three Claimants. In sum, of the 5,391 associates who were terminated after failing the PGA (and the hundreds of thousands who took it and passed), the Commission has now only been able to identify *thirteen* who it alleges failed and were terminated due to a disability.

On March 21, 2025, Walmart propounded its second set of Requests for Production and Interrogatories (together, "Requests") to the Commission. Ex. A (Walmart's Requests). Among other Requests, Walmart requested the Commission produce (1) all communications with Claimants who were identified in the Commission's amended initial disclosures served on November 22, 2024, to the extent they occurred prior to each Claimant's assent to representation by the Commission or involved third parties, as requested by RFP No. 51, (2) all communications with any Potential Claimants or other individuals who were terminated after failing the PGA, including any surveys or questionnaires sent to or received from Potential Claimants, as requested by RFP No. 50, (3) all communications with other third parties regarding the Charging Parties, Claimants, or Potential Claimants, including any family members, friends, acquaintances, co-workers, teachers, employers, or medical providers, as requested by RFP No. 52, and (4) the identities of every individual who is not a Charging Party or Claimant, who provided the Commission with information related to this Action, including the date, time, place, and means of communication, and the substance of any such communication, as requested by Interrogatories Nos. 7 and 8. On April 21, 2025, the Commission responded, objecting to most of the Requests based on the work product doctrine and attorney-client privilege. Ex. B (Commission's Responses).

This is the third time Walmart has sought court intervention regarding the Commission's assertions of privilege. On May 21, 2024, Judge Comstock resolved the first privilege dispute, ruling that (1) the attorney-client privilege only extends to communications that occurred after "an

3

aggrieved party expressly assents to representation in a manner that is demonstrable and consistent with the establishment of an attorney-client relationship" (ECF 58 at 8), and (2) communications with third parties, including family members, are not protected "unless the third party's presence is reasonably necessary to facilitate communication between the attorney and their client" (ECF 58 at 12).  On October 15, 2024, Judge Comstock again curtailed the Commission's assertions of privilege over communications with third parties, ruling that such communications with third parties are not protected by the attorney-client privilege and are only afforded work product protection if the documents are "clearly counsel's opinion work product."  ECF 71 at 10.

From April 23, 2025 to April 30, 2025, the parties engaged in email and in-person correspondence to resolve the dispute.  At an impasse, the parties emailed the Court's Chambers on May 1, 2025, to present a summary of the dispute and request hearing.  The Court reviewed the parties' description of the dispute and respective positions and requested formal briefing and a corresponding motion on the dispute on May 16, 2025.  Walmart now respectfully moves the Court to compel the Commission to produce the responsive information.

## II. ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When an opposing party fails to answer an interrogatory or respond to a request for production of documents, "a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a); *see also Keaton v. Prop. & Cas. Ins. Co. of Hartford*, No. 4:07-CV-634- BSM, 2008 WL 2519790, at *3 (E.D. Ark. June 20, 2008) (granting a motion to compel where defendant refused to produce requested documents).

4

The Commission does not dispute the relevance of Walmart's Requests. *See* Ex. B. Rather, the Commission asserts that all of the requested information is shielded from disclosure by the attorney-client privilege and the work product doctrine. Ex. B. But the Commission has not and cannot meet its burden to "prove [the] applicability" of the attorney-client privilege. *Forte v. Econ. Premier Assurance Co.*, 2007 WL 9724265, at *1 (W.D. Ark. Aug. 16, 2007). Nor can it meet its burden to "establish that the materials in question constitute work product" or that the protection has not been waived. *Ark. Okla. Gas Corp. v. BP Energy Co.*, 2022 WL 1690266, at *2 (W.D. Ark. May 26, 2022) (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)). For the reasons set forth below, the Court should reject the Commission's assertions of privilege and work product as unwarranted and foreclosed by Judge Comstock's prior Orders on these issues and compel the Commission to produce the requested materials.

**A.    The Commission's Refusal to Produce Questionnaires and Other Communications with Potential Claimants and Other Third Parties Violates Judge Comstock's October 15, 2024 Order and Is Contrary to Law**

Walmart seeks all communications with any Potential Claimants who were terminated for failing the PGA—most notably, the questionnaires and responses the Commission used to try and recruit Claimants—as well as communications with other third party individuals, such as family members, friends, acquaintances, co-workers, teachers, employers, or medical providers regarding the Charging Parties, Claimants, or Potential Claimants. The Commission's privilege and work product objections should be overruled, for several reasons.

First, the Commission's refusal to produce communications with unrepresented Potential Claimants and third parties, regardless of whether they contain opinions of counsel, violates Judge Comstock's October 15, 2024 Order. There, Judge Comstock required the Commission to produce all communications with third parties—including communications with the parents of a Charging Party—except for a narrow set of documents that were "clearly counsel's opinion work product."

5

ECF 71 at 10. Other courts have similarly held that communications with claimants and any third parties who are not represented by the Commission do not reflect work product unless they specifically include opinions of counsel. *See EEOC v. ABM Indus.*, 261 F.R.D. 503, 513 (E.D. Cal. 2009).

Second, communications between the Commission and Potential Claimants whom the Commission does not represent, including questionnaires and surveys broadly disseminated to locate additional claimants are not protected by the work product doctrine regardless of whether they contain opinions of counsel. *See ABM Indus.*, 261 F.R.D. at 513. In general, the work product doctrine "does not protect facts concerning the creation of work product or facts contained within work product." *Kushner v. Buhta*, 322 F.R.D. 494, 498 (D. Minn. 2017) (citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)). Questionnaire responses are essentially verbatim witness statements made by third parties; not work product. *ABM Indus.*, 261 F.R.D. at 511-13. Courts have explicitly compelled the Commission to produce questionnaires and surveys sent to Potential Claimants under nearly identical circumstances. *Id.* at 511 (compelling production of an EEOC questionnaire…sent to over 4,000 potential claimants "to gather additional facts relevant to the EEOC's claims and to identify witnesses who might not necessarily have, or wish to, pursue a claim against [defendant]" in response to a court order to identify potential claimants by a given date.)

Third, even if the questionnaires and responses could qualify as work product, the Commission waived any protections over them by broadly disseminating the questionnaire to current and former employees of Walmart. Work product protections are forfeited "when work product materials are given to an adversary or used in such a way that they may end up in the hands of an adversary." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 215 (S.D.N.Y. 2009). Broad

disclosure of work product to third parties results in waiver of the protection where the disclosure "substantially increased the opportunities for potential adversaries to obtain the information." *Am. Standard, Inc. v. Bendix Corp.*, 71 F.R.D. 443, 446 (W.D. Mo. 1976). While the Commission has withheld the details of its questionnaire distribution, it is clear that the Commission sent questionnaires to at least a significant percentage of the 5,391 individuals Walmart disclosed in discovery. And the Commission's final list of Claimants to add to the case includes both current and former employees, indicating that the broader distribution list for the questionnaire included many *current* Walmart employees. Courts have found waiver of work product protection on virtually identical facts. *See ABM Indus.*, 261 F.R.D. at 512-13 (finding waiver where the Commission "mailed the questionnaire to approximately 4,000 current and former [employees]"); *Schanfield*, 258 F.R.D. 211 at 215 (finding waiver because "[i]t is simply common sense … that sending materials to employees of a corporation substantially increases the likelihood that such material will reach others within the corporation").

Finally, at the very *minimum*, the facts learned from the questionnaires are clearly not protected. *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 366 (D. Neb. 2004) (the work product doctrine does not protect facts or the mere fact of investigation, even if those facts are contained within work product). Even in *E.E.O.C. v. Swissport Fueling, Inc.*, which the Commission relied on in its portion of the joint email raising this dispute to Chambers, the court required the Commission to disclose the contents of the questionnaires of any individuals who returned the questionnaires who were not represented by counsel. *E.E.O.C. v. Swissport Fueling, Inc.*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *14 (D. Ariz. May 10, 2012).

### B. The Commission's Blanket Refusal to Produce Any Communications with Claimants Violates Judge Comstock's May 21, 2024 Order

Judge Comstock's May 21, 2024 Order held that "Walmart generally may discover communications between aggrieved parties and the Commission prior to attachment of the attorney-client privilege as these prior communications are not privileged, even if an attorney-client relationship is later established unless the aggrieved party viewed the Commission as his attorney at the time the communication was made." ECF 58 at 9. This principle is consistent with case law holding that an attorney-client relationship does not exist unless the aggrieved party manifests an intent to be represented by the Commission and that intent is demonstrable through affidavits or other documentation. *See EEOC v. Republic Services, Inc.*, 2007 WL 465446 (D. Nev. February 8, 2007) (some affirmative step to enter a relationship with the Commission must be taken). Judge Comstock also held that Walmart is entitled to "the name and contact information of any individual who has manifested assent to be represented in this matter by the Commission, and the date on which assent to representation was demonstrable by the aggrieved party" in the form of "a declaration (or affidavit) signed by the aggrieved party, or a letter, email or other written communication from the aggrieved party to the Commission" demonstrating assent. ECF 58 at 8-9. To date, the Commission has not provided any information or signed communication demonstrating assent by any of the additional Claimants disclosed on November 22, 2024, and now refuses to produce any communications with those Claimants, regardless of when they occurred.

The Commission's privilege objections are unfounded in any event. Courts have recognized that communications between the Commission and aggrieved individuals are not privileged unless the individual expressly sought legal advice or representation from the Commission at the time of the communication. *E.E.O.C. v. Collegeville/Imagineering Ent.*, No.

8

CV-05-3033-PHX-DGC, 2007 WL 158735, at *1 (D. Ariz. Jan. 17, 2007); *EEOC v. International Profit Associates, Inc.*, 206 F.R.D. 215, 219 (N.D. Ill. March 27, 2002) (attorney client relationship formed by affirmative action); *U.S. E.E.O.C. v. ABM Indus. Inc.*, 261 F.R.D. 503, 513 (E.D. Cal. 2009) (shielding "only responses made by individuals who have taken affirmative steps to enter into an attorney-client relationship with the EEOC.")  Unless the Commission can show that any such communications occurred after a Claimant manifested assent to representation by the Commission, Walmart is entitled to these communications to evaluate the claims against it and to prepare its defense.

C. **The Court Should Reject the Commission's Assertion of Work Product Protection Over Facts**

Walmart also requests that the Court compel the Commission to respond to Interrogatories Nos. 7 and 8, which seek the identities of individuals who are not Charging Parties or Claimants who provided the Commission with information related to this Action, including the date, time, place, and means of communication, and the substance of any such communication.  In refusing to respond to these interrogatories, the Commission wrongly asserts work product protection over the identity of the individuals contacted by counsel (through questionnaires or otherwise). Ex. B. But courts in the Eighth Circuit "have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or *the persons from whom he has learned such facts*." *Baise v. Alewel's, Inc.*, 99 F.R.D. 95, 96 (W.D. Mo. 1983) (emphasis added). Factual information about the identities of individuals with knowledge and the substance of their statements is not protected and must be disclosed. *EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005). In *E.E.O.C. v. The Pasta House Co.*, the court required the EEOC to identify the individuals who filled out questionnaire responses. 1996 WL 120648, at *3.  As discussed above, even if the document itself

falls under the protection of the work-product doctrine, the relevant, underlying facts contained in the documents are discoverable. *See E.E.O.C. v. Jamal & Kamal, Inc.*, 2006 WL 2690226 at *2 (E.D.La. Sept. 18, 2006) (slip opinion) (stating that the work-product doctrine "does not extend to the underlying facts relevant to the litigation.")

The Commission's statement that it has disclosed witnesses under the Federal Rules is inapposite. Ex. B. While the obligation to disclose under Rule 26(a)(1)(A)(i) is limited to individuals the disclosing party may use to support its claims or defenses, Rule 26(b)(1) expands the scope of discovery to include individuals with relevant information, regardless of whether the disclosing party intends to use them at trial. Fed. R. Civ. P. 26(b); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). Court's construe Rule 26(b)(1) broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The Commission cannot hide behind Rule 26(a) to shirk its separate obligations under Rule 26(b). Walmart respectfully requests the Court compel the Commission to produce the identifying information for this separate and independent reason.

### III.   CONCLUSION

For the foregoing reasons, and pursuant to Rule 37(a), Walmart respectfully requests that this Court issues an order compelling the Commission to promptly produce fulsome responses to RFP Nos. 50-52 and Interrogatories Nos. 7 and 8. In addition, Walmart requests the Court order the Commission to reimburse Walmart for its reasonable attorneys' fees and related expenses associated with the filing of this Motion (*see* Fed. R. Civ. P. 37(a)(5)) and grant such other and further relief as it deems proper.

Dated: June 2, 2025

/s/ *Steven W. Quattlebaum*
Steven W. Quattlebaum (84127)
E. B. Chiles IV (96179)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201
Telephone:   (501) 379-1700
Facsimile:   (501) 379-1701
Email:  quattlebaum@qgtlaw.com
Email:  cchiles@qgtlaw.com

Vincent O. Chadick (94075)
Andrew S. Dixon (2019193)
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, AR 72762
Telephone:  (479) 444-5200
Facsimile:  (479) 444-6647
Email:  vchadick@qgtlaw.com
Email:  adixon@qgtlaw.com

Theane Evangelis (*pro hac vice*)
Katherine V.A. Smith (*pro hac vice* )
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joseph R. Rose (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, #2600
San Francisco, CA 94111
Telephone:  415.393.8200
Facsimile:  415.393.8306
*Attorneys for Defendants Walmart Inc. and Walmart Stores Arkansas, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2025, I filed the foregoing with the Clerk of the Court using the ECF electronic filing system, which shall send notification of such filing to the following counsel of record for plaintiff:

**Markeisha Savage, Esq.**
at markeisha.savage@eeoc.gov

**Sarah Howard Jenkins, Esq.**
at sarah.jenkins@eeoc.gov

**Faye Williams, Esq.**
at faye.williams@eeoc.gov

**Gary Sullivan, Esq.**
at gary.sullivan@eeoc.gov

/s/ Vincent Chadick

*Attorney for Defendants Walmart Inc. and Wal-Mart Stores Arkansas, LLC*